INHABITANTS OF NORTH READING *vs.* COUNTY COMMISSIONERS
OF MIDDLESEX.
JOSEPH H. EATON *vs.* SAME.

A town created out of part of a town already existing, after a highway within that part has been adjudged by the county commissioners to be of common convenience and necessity, and the time for locating it fixed and notice given to the old town, is not entitled to a further hearing on the question of the necessity of the way.

It is no ground for issuing a *certiorari* to quash the location of a highway, that the original order of the county commissioners required the way to be completed in six months, and gave a year to the owners of the land to remove timber and trees, if the order was modified by the commissioners within two months after it was passed, by extending by six months the time for completing the road, and shortening by five months the time for removing timber and trees, although no new notice was given to the town of the meeting of the commissioners at which the modification was made.

It is no ground for issuing a *certiorari* to quash the location of a highway, that it omits to state the name of one person whose land is taken therefor, or to describe his land as of a person unknown.

PETITIONS for writs of *certiorari* to quash the proceedings of the county commissioners, locating a highway within that territory, formerly part of Reading, but which was set off as a separate town by the name of North Reading by *St.* 1853, *c.* 71.

The grounds relied upon were, in both cases, 1st. That the town of North Reading had no notice of the meeting of the commissioners at which the way was adjudged to be of common convenience and necessity ; 2d. That the order of the commissioners for completing the highway was impossible to be performed ; and, in the second case, 3d. That though the way was located over Eaton's land, he was not named in the location, nor any damages assessed to him, nor his land described as of a person unknown. The facts of the cases are stated in the opinion.

*O. P. Lord,* for the petitioners.

*J. G. Abbott & D. S. Richardson,* for the respondents.

DEWEY, J. The court perceive no sufficient ground for ordering a *certiorari* in either of these cases.

1. The preliminary proceedings, in reference to the adjudication that this way was one of common convenience and necessity, were all proper. The notice to the town of Reading was the legal notice, and the only one that could have been given, as the town of North Reading had then no existence as a town. Its inhabitants and territory were then attached to the town of Reading, and were of course affected by the proceedings against the town of Reading. At the time of the incorporation of North Reading as a separate town, this way had been already declared a necessary way, and the time of proceeding to locate the same had been fixed, and notice given to Reading ; and it was under this appointment, and at an adjourned meeting thereof, that this way was located. In point of fact, the new town of North Reading, having come into existence during the time that elapsed previously to holding this adjourned meeting, was actually notified of this adjourned meeting, and was there represented. The fact therefore, that the new town of North Reading was set off as a separate town after the commissioners had decided this way to be one of common convenience and necessity, did

not create any necessity for commencing the proceedings anew; and of the meeting at which the actual location of the way was made the town of North Reading had notice, and appeared at it.

2. The next question is upon the order of the commissioners as to the time within which the way was to be constructed and completed for public travel, and the time allowed to the occupants of the lands over which the way was laid out, to remove therefrom any wood, timber or trees. In the original order, adopted on the 23d of November 1853, the way was required to be completed on or before the 1st of May 1854, and the wood and trees to be removed by the 1st of November 1854.

This order, it is said, was inconsistent in itself, as it required the way to be made before the time had arrived for removing the trees and wood. One answer given to this by the respondents is, that there is nothing before the court to show that, within the limits of the road to be constructed, there were any trees or timber, although there might have been such within the limits of the located road.

But the more satisfactory answer is the fact, that in January 1854 the commissioners modified this order, fixing the time for removing the timber and trees at the 1st of June 1854, and the time for constructing and completing the road at the 1st of November 1854. It is objected to this, that there was no new notice given to North Reading to appear before them at the session in January 1854, and show cause why the order of November 1853 should not be modified in this respect. It is not suggested that the petitioners did not have actual notice that this had been done; and it is of record that they were before the commissioners at the session in January 1854, presenting their petition for a discontinuance of this road. The modification was probably only a correction of an error in the original order, transposing the time of removing the wood and trees to that intended as the time of completing the road. The amendment in the order did in fact extend the time for constructing the road from the 1st of May to the 1st of November 1854, and shortened the period for removing the wood and trees five months. We think this alteration could work no injustice

to the petitioners, but was more favorable to them, and that they cannot rely upon it as ground for *certiorari.*

3. In the case of Eaton, the further question arises, whether a *certiorari* should be granted because no damages were allowed to the petitioner for land taken for the way, nor his name inserted as a person to whom no damages were allowed, nor his land described as land of a person unknown.

Some of the earlier cases, as *Commonwealth* v. *Coombs,* 2 Mass. 489, and *Commonwealth* v. *Great Barrington,* 6 Mass. 492, seem to require that the persons over whose land the proposed way passes should be named. It is however rather directory; as it was in those cases stated that, if the names were unknown, the commissioners might so state the fact. A different view was taken by this court in the case of *Monagle* v. *County Commissioners,* 8 Cush. 360, where it was held, that if the commissioners make no return of damages as to individuals over whose land the way passes, it is equivalent to a decision rejecting any claim for damages to those persons whose names are thus omitted. Practically, it seems of little consequence whether the names, and the rejection of the claim for damages, appear by the direct language of the return of the assessment of damages, or are inferred from the fact that no damages were awarded. Both are equally decisive of the rejection of the claim; and if the location of the way is distinctly defined in the report of the location, and thus notice given to the landholder that his land is taken, and by the further report of damages he finds none awarded to him, it is virtually a refusal to allow him damages, and would authorize an application for a jury to assess damages, as much as if his name had appeared in the report as one to whom no damages were allowed. It is certainly the more regular mode to name, in the assessment of damages, all the persons over whose land the way passes, and to state those, if any, to whom no damages are awarded. If the omission to do so would bar the landholder from asking for a jury to assess his damages, we might be holden to grant a writ of *certiorari,* however fatal the consequences might be—as they certainly would if the proceedings were illegal—in render-

ing nugatory the whole location and establishment of the way
But holding, as we do, that the rights of the land-owner may be
equally secured by enforcing his right to have a jury to revise
the doings of the commissioners as to his damages, where his
land has been taken and no damages awarded, although not so
stated directly, we are of opinion that a *certiorari* should not be
ordered for the cause assigned.         *Petitions dismissed.*